We're going to move now to case number two. This is Appeal 21-3039 Kang Sok v. Kilolo Kijakazi. And we're going to begin with oral argument from Mr. Duncan. Good morning, Your Honors. Good morning. Please, the Court. Dana Duncan on behalf of Mr. Sok. The issue before the Court is the cogency, viability, and reliability of the method employed by the vocational expert. In this case, it's step five of the sequential process. At issue is the numbers taken from the Bureau of Labor Statistics organized by the standard occupational classification system and then converting those into a DOT code. This case rests clearly on this point because Mr. Sok had 15 years as a machinist with a very good earnings record and ultimately his decision, or the decision of his benefits rests at step five. As an analogy, note in the movie Apollo 13, there's a scene where the astronauts are going to have trouble with carbon dioxide and the engineers say they have to figure out a way to get a square cartridge into a round hole. It's that very thing that we have a problem with in the Social Security system. Mr. Duncan, can I ask a question? That problem seems a lot more complex to me than determining the number of jobs. At what point does the obvious nature of the number that there are a vast number of housekeeper, cleaner housekeeper, cafeteria attendant, and linen grader. We see cases where there are these jobs numbers are close because there's 9,000 jobs in the economy. There's a very small number of jobs and is that a significant number of jobs. Here, isn't it obvious that there's a significant number of jobs in the economy when those are the jobs? Your Honor, this is the fourth time one of these cases or fifth time one was unpublished that this issue has been brought before this court. In both Chavez, Grace, and Ringer, this court has held that that standard does not apply. If the data is wrong, it's wrong and it needs to be corrected and remanded. There's not an issue of some sort of harmless error standard where there should be enough jobs. It's in all of those different, all three cases, all three of those had occupations that existed in significant numbers over the broad range of the economy. The problem comes in that we have not just saying it's a light job, but you have all these other factors that come in. Vibration. I wouldn't. But hold on for a second. Before you get down to that, here it seems to me that the issue is the number of jobs and there are significant number of jobs in the national economy. The locational expert testified here's the number of jobs under the big umbrella criteria and then as far as the number of jobs under the smaller umbrella criteria, I've been least basing it in part on my experience, my knowledge of the industry, etc. And I think the question is, is that enough? Can we consider the vocational experts experience in determining how many jobs are in that little umbrella? What more do you want? What would happen on remand? The vocational expert has no background in statistics. He's only assessed or placed people within the area of his business. So he has no concept of national numbers or where the jobs are nationally. So what they're doing is they're using the BLS numbers and they're coming up with a total. The methodology used in this case is non-existent. He just he's using terms like Mr. Duncan, and isn't that the, I think that's your strongest argument, right? That this vocational expert, rather than providing some sort of cogent or reasonable analysis as to how the end number was derived, basically to borrow something from kind of another area of the law was basically dipsy-dixit, right? It's like, just believe me because I know. Correct. That's what we have here. And in fact, Brayes uses that very terminology, trust me. And that's what we have. What's wrong with that under the substantial evidence test in this case? I mean, here's what he said, actually, based on my knowledge of the labor market. My knowledge of the labor market over 30 years of job placement would indicate to me that these jobs are readily available across the nation in, you know, healthy numbers. I estimate 100,000 for cafeteria attendance to reflect from that grouping. That seems to me to be obvious. I mean, there are obviously a lot of cafeteria jobs in the national economy. And why is 30 years experience in the job placement industry not enough to estimate the number of cafeteria jobs? Which, by the way, is probably underestimated. I mean, there may be 100,000 cafeteria jobs in a handful of states. Well, your honor, first of all, the court's precedent clearly indicates that that is not sufficient. Well, our court, the court's precedent indicates that all it is based, we reverse if there's not substantial evidence, which is a very, very low burden. We rely on the ALJ. I understand that. But this court, unless, and I mean, I've, I litigated Ringer before this court, and the testimony in that case was virtually no different. I laid out in the brief the language of both Brace and this case where it talks about weighing and all this. The problem is, is that it's the number involved. The cafeterias attended, there are in that category, the Bureau of Labor Statistics provides 455,700 for that category, with multiple DOT codes under that SOC code. And we have no idea exactly how much. In a case recently, Judge Lodwick in the Eastern failing to describe where the numbers comes from is akin to telling a medical student to perform a heart transplant by gathering all of the necessary tools and then transplanting the heart. I don't see the analogy. It doesn't explain where the numbers are coming from, and that's the key. Because if you explain how you arrive at the numbers, and you can start pointing to elements from the hypothetical question, it starts to erode the potential number of jobs. When you have no idea how that number is calculated, you have no ability to completely and fully cross-examine and If we were looking at that tabula rasa, I think that argument may have more strength. The problem is we do have Judge Conley here explaining the appropriate methodology. Judge Conley, I think four or five pages in the district court decision, walks through where that comes from. Is it your argument that the district court improperly inferred from the record some of the conclusions that the district court did? I'm not sure where Judge Conley came up with it, because that's not at all the case. I mean, Your Honor, with due respect to the court, I teach this stuff in classes, and I can't understand where this came from. It just doesn't make any sense, because it's the equivalent of just pulling it out of thin air. And after all, Donahue specifically says that the numbers have to be some sort of viability. It can't be made out of whole cloth. Unfortunately, that's what we have here, because a lot of the vocational experts spend a lot of time assessing the numbers, have viable methods, use county business patterns, use multiple sources. We don't have anything here, and the ALJ never asked a single question to refine that. I'd like to reserve the remainder of your time. Yes, thank you. Very good. Thank you. Good morning. Jean Godfrey on behalf of the Commissioner of Social Security. The question before the court today is narrow. Mr. Salk does not dispute that he can work as a housekeeper, a cafeteria attendant, and a linen grader. The vocational expert estimated that the national economy contains a total of 330,000 jobs within those three occupations. Now, while Mr. Salk argues that that testimony was unreliable, he does not specifically challenge the estimate that 200,000 housekeeper jobs exist. He presents no argument in his opening or reply briefs regarding that occupation, and as Judge Kirsch noted, it's pretty obvious that the 200,000 housekeeper job estimate is reasonable. So if this court were so inclined... Ms. Godfrey, could I ask you, this sequential step analysis, at step five, who has the burden to set forth evidence with regard to those issues in step five? At step five, the burden of proving disability remains with the claimant, but the burden of producing evidence that the claimant can perform work is with the commissioner. So actually, with regard to the congressional intent underpinning this requirement, it's important to consider why the significant job language was added. If the claimant cannot perform his past work at step four... So I guess my question is, at step five, if an expert were to come in and his or her testimony consisted only of, I have 50 years of experience in this market, to anyone, it's plain as day that there are lots of jobs of this kind out there, and then sits down. Is it your position that that would be sufficient under this court's precedent as to whether or not the Social Security Administration has satisfied its burden of production at step five? Well, I think if the claimant were to ask the expert specific questions to follow up on that testimony... But you just said it's not the claimant's burden to do that, right? So it's the Social Security Administration's initial burden to set forth evidence, right? And so under my hypothetical, let's say that's the only evidence that's presented and there's no cross-examination. Under that scenario, is it your opinion that, or your position, that the Social Security Administration satisfies burden of production under this court's precedent? Yes. Under Coyer, this court's precedent, I would argue that the claimant would have waived, under that specific hypothetical, any argument challenging that testimony without asking any questions at all. But if there were questions asked and the vocational expert continued to just rely on that experience, I would say no, that is not enough. The vocational expert has to do more to explain how that experience, you know, aided in his analysis of the raw data. And we do have more here. With respect to, for example, the cafeteria attendant job, the vocational expert explained that that occupation appeared in an SOC group containing a total of 450,000 jobs. That's data from the Bureau of Labor Statistics. And then he identified that there were four DOT occupations within that SOC group. So we know the total number of jobs, we know the total number of occupations. In addition to cafeteria attendant, we had dining room attendant, bartender helper, counter supply worker. And then he explained that his knowledge of the labor market, derived from his professional experience, informed him that each of those four occupations... So what did he, did he point to a particular experience that he had in that particular market, or the basis of that experience, or what formed his experience? He didn't point to specific experience, you know, with respect to that occupation, but he did reference his experience as a vocational counselor, placing individual workers into jobs. And this court in Chavez held that a vocational expert can support his approximation by, quote, drawing on knowledge of labor market conditions and occupational trends, gleaned from placing workers in jobs, end quote. So that is enough under this court's precedent to support his estimate as reliable as our position. So returning to the congressional intent for the Step 5 requirement, the ALJ must also demonstrate there's a significant number of jobs. And Congress added that requirement as a safeguard at this step of the analysis to ensure that disability benefits are not denied on the basis of a few isolated jobs. So that is what the court should in mind when we're analyzing the testimony here. There is no requirement for a reproducible, mathematically precise job count. It's going to be an estimate, and that's all that's required. Mr. Salk emphasizes that the vocational expert here had no background in statistics, but that's simply not required. This court emphasized in Liskowitz that a vocational expert is not a risk-taker or a statistician. That's simply not their role at this step of the analysis. He also alleges that the vocational expert had no concept of national jobs, but that does not borne out by the record. He relied on national data from the Bureau of Labor Statistics. And this court has made clear in Chavez that the vocational expert is not expected to tally the number of jobs in the area where the expert is working, let alone throughout the country. Again, that's not a requirement by this court's case law. So I want to emphasize here that the vocational expert was not blindly following a method that this court has been critical of in the past. Counsel argues in his brief that the vocational expert relied on the equal distribution method, but that is contradicted by the vocational expert's own testimony. Rather than blindly following an equal distribution method, which can easily be recreated, he explained that his estimates were based on knowledge of the labor market, his experience in job placement, and vocational counseling. So he said that rather than just kind of divvying it up pro rata, based on his experience, that's how he got to the number that he did. Yes. And that's clear also when we looked at the linen sorter position. He explained that that occupation appeared in an SOC group containing a total of 782 DOT occupations. And again, he went into greater detail explaining how he arrived at in that group were very specific and very limited in where they could be found. But in contrast, the laundry and related work where the linen grader job was found crosses many specific industries. So he's providing more of an explanation that a reasonable person could follow and see how he arrived at this estimate. He wasn't just referencing his experience with no additional explanation. And again, the standard here is substantial evidence. It's a reasonableness standard. Could a reasonable person accept this estimate as reliable? And the answer here is yes. This case is distinguishable from Runger, which Mr. Salk argues controls. The chart that he provided in his brief is actually inaccurate. And I noted that in my brief as well, you can compare it to the testimony in the record. Runger, the vocational expert, obscured the origin of her job estimates and even denied the most source, which was the SOC codes from the Bureau of Labor Statistics. Here, the vocational expert clearly identified the source for his data. And then he provided a straightforward explanation as to how he analyzed that data using his experience. The court has no further questions, and we ask that you affirm the ALJ's decision. Thank you very much, Ms. Godfrey. Thank you. Mr. Duncan, let's go to you for rebuttal. Thank you. First off, Coyer is unpublished, and it was involving whether or not there was any questions asked, let alone enough to raise doubts as to the veracity or viability of the methodology. And under Carr, that may not even be applicable anymore as to whether there is waiver even in vocational cases. And as far as the number, the commissioner continually puts the onus on the when the standard of review at step five, the burden of proof rests with the commissioner. In this particular case, you cannot recreate how he arrived at 100,000 jobs. It's just not possible. Without having that opportunity, you cannot establish that the testimony is viable. It's just as equal that I could say that there were 5,000 of those jobs, which under the precedent of this court would not be a significant number. The challenge, Mr. Duncan, seems to be if all we have in front of us is those transcript pages, that argument might have more traction. But when I look at pages seven to 11 of Judge Conley's Mr. Gusloff, the explanation, the numbers, the factors, we're an appellate court of review. We'll review the district court's decision. And it would be, I think, helpful to hear from you, is your challenge to just the VE transcript? Or how do you ground your challenge against the district court's order? It's de novo. So this court reviews this case de novo. So the district court, it's not going to be based on that. And quite frankly, I don't have any idea where Judge Conley came up with that assessment. I'm not finding it in the record, and I don't see how it arrived. And I mean, we participated in oral arguments, and I outlined again there that it has to be that is recreatable, and it's just not. Thank you, Mr. Duncan. Thank you. Thank you, Ms. Godfrey. The case will be taken under advisement.